# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

**CAROLINA HOLLINS,**

     **Plaintiff,**

**-vs-**               **Case No.  A-09-CA-645-SS**

**MICHAEL J. ASTRUE, COMMISSIONER OF**
**SOCIAL SECURITY,**
      **Defendant.**

_____

### O R D E R

Before this Court is Plaintiff Carolina Hollins's ("Hollins") Complaint seeking review of a final decision of the Commissioner of the Social Security Administration pursuant to § 205 of the Social Security Act, 42 U.S.C. § 405(g) [#5], Defendant's Answer [#11], Plaintiff's Brief [#16], Defendant's Brief in Support of the Commissioner's Decision [#17], the Report and Recommendation of the United States Magistrate Judge [#18], the Plaintiff's Response and Objections to the Report and Recommendation of the United States Magistrate Judge [#19], and the transcript of the Social Security Record in this case ("Tr.").

Hollins applied for disability benefits on April 27, 2007, alleging a disability onset date of April 1, 2007.  Tr. 89-97.  Her disability application was denied initially on July 11, 2007, and denied upon reconsideration on October 12, 2007.  On November 10, 2007, Hollins requested a hearing before an administrative law judge ("ALJ").  Tr. at 37-38, 42-53.  This hearing was held on August 8, 2008.  Tr. 18. On March 5, 2009, the ALJ released his decision, concluding that although Hollins  had the severe impairments of degenerative disc disease and depression, she was not disabled within the meaning of the Social Security Act at any time from April 1, 2007 through

September 30, 2008.  Tr. 12, 16.  As a basis for these conclusions, the ALJ determined Hollins's impairments and combinations of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and even though Hollins was unable to perform any of her past relevant work, significant numbers of jobs Hollins could perform existed in the national economy.  Tr. 12, 15-16.  Hollins appealed the ALJ's decision to the Appeals Council, which denied her request for review on June 23, 2009.  Tr. 1-3, 5.  On August 27, 2009, Hollins filed this action in federal court seeking judicial review of the ALJ's decision.  *See* [#5].

All matters in this case were referred to the Honorable Robert Pitman, United States Magistrate Judge, for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges, as amended, effective December 1, 2000.  On May 13, 2010, the Magistrate Judge issued his report and recommendation that this Court find the ALJ applied the proper standards and based the decision on substantial evidence, and deny the claims made in Hollins's complaint.   Report & Recommendation at 14-15.

On May 24, 2010, Hollins filed her objections to the Magistrate Judge's report and recommendation.  *See* [#19].  This Court has reviewed *de novo* Hollins's complaint and brief, the defendant's brief, the Magistrate Judge's report and recommendation, Hollins's objections thereto, and the transcript of the Social Security record filed in this case, and now ACCEPTS the report and recommendation of the Magistrate Judge for the reasons set forth below.

**Factual Background**

Hollins was born on September 19, 1956. Tr. 73. She is a high school graduate. Tr. 95. She has not worked since April 1, 2007, the date on which she alleges her disability began. Tr. 89.

Hari Tumu, M.D. ("Tumu") completed a history and physical report of Hollins on April 4, 2007. Tr. 176-77. Hollins told Tumu she had been dropped on her left side by nursing staff during a mid-March visit to the emergency room for a chest pain evaluation. *Id.* Hollins reported, following the fall, developing pain in the left side of her neck, left trapezius, and left shoulder. *Id.* This pain radiated into her left arm and left hand. *Id.* Hollins tried, without apparent effect, narcotics, anti-inflammatories, and muscle relaxants; her pain progressively worsened. *Id.* Hollins reported the pain was worse when she turned her head. *Id.* Tumu stated a review of Hollins's MRI indicated a moderate-size left foraminal C5-6 disk herniation. *Id.* Given Hollins's history of pain, weakness, and numbness, Tumu recommended a C5-6 diskectomy. *Id.*

Tumu reported in a surgical followup, dated April 20, 2007, Hollins was still reporting left shoulder pain that worsened when she elevated her shoulder. Tr. 212. Hollins was also reporting some rapid fatigue of her left leg when she walked or did any kind of exercise for a long time. *Id.* Tumu noted Hollins had some mild weakness in her left arm. Tumu ordered MRIs of Hollins's spine and left shoulder. *Id.*

An earlier MRI of Hollins's cervical spine and left shoulder was taken after her left laminotomy and microdiskectomy. Tr. 210. It revealed minimal residual annular protrusion, with improvement in comparison to the prior study. *Id.* There was no evidence of any herniated nucleus pulposus or abnormal enhancement. *Id.* It also revealed probable subtle tendinitis and bursitis, with

no evidence of a rotator cuff tear or tendinitis.  Tr. 211.  Minimal degenerative changes to the acromioclavicular joint were also noted.  *Id.*

On April 21, 2007, Hollins was seen by Arpan N. Desai, D.O. ("Desai") for a pain management evaluation.  Hollins's chief complaint was noted as cervical pain with radiation into her left upper extremity, with occasional numbness in her left hand and index finger.  Tr. 221-23.  Her left cervical pain was noted as greater than her upper extremity pain.  *Id.*  Hollins reported her pain as eight on a scale of zero to ten.  *Id.*  Desai noted Hollins's tolerable walking and standing as 2-½ hours each.  *Id.*  Desai's impression was persistent cervical and left upper extremity radicular pain with a reactive muscle component.  *Id.*  Pain medication was prescribed.  *Id.*  Desai also prescribed and performed trigger point injections on May 10 and May 30, 2008.  Tr. 224, 226.

A Social Security Field Office report, dated May 23, 2007, noted Hollins was very talkative during a phone interview.  Tr. 98.  The interviewer stated Hollins was fine for over thirty minutes, but after sneezing  and aggravating her neck vertebrae, Hollins began choking and crying in pain.  *Id.*  Hollins told the interviewer she had not taken her pain medicine because it made her sleepy and because she was afraid of not being alert enough for the interview.  *Id.*  The report also noted Hollins experienced drowsiness and dizziness as side effects of her medications.  Tr. 94.

Hollins completed a Daily Activity Questionnaire on June 9, 2007.  On an average day she stated she woke up in pain, sore and swollen, then took her medication, washed up, gave her daughter her meals, but was too unmotivated to get dressed.  Tr. 109.  Hollins reported her physical problems limited her ability to sit, stand, walk, lift/carry, use her hands, bend, kneel/squat, climb, reach, drive a car, do housework, engage in recreation and perform personal care, but not her ability to hear, speak, read a newspaper, watch television, or use the phone.  *Id.*

-4-

Robin Rosenstock, M.D. ("Rosenstock") performed a residual functional capacity ("RFC") assessment for Hollins on July 5, 2007. Rosenstock found Hollins could occasionally lift twenty pounds, frequently lift ten pounds, sit, stand and/or walk for about six hours in an eight hour workday, with an unlimited ability to push and/or pull. Tr. 229. Rosenstock indicated Hollins would have no postural, manipulative, visual, communicative or environmental limitations. Tr. 230-34. Rosenstock also indicated Hollins's allegations of functional limitations were currently severe, but were not expected to last twelve months. Tr. 233. This assessment was reviewed and affirmed by John Dufor, M.D. on October 8, 2007. Tr. 236.

An office visit note from Anne Cooper, M.D. ("Cooper") dated January 14, 2008 indicates Hollins was experiencing depression. Tr. 283. However, Hollins was not currently taking medication. The recommendation was for Hollins to restart her medication. *Id.*

Cooper saw Hollins again on February 11, 2008. Hollins reported feeling depressed since her surgery the prior year. Tr. 282. She denied being suicidal, homicidal, or having any audiovisual hallucinations. *Id.* Hollins told Cooper she had been taking Zoloft but stopped four days prior due to concerns over weight gain. *Id.* Hollins also stated she was interested in switching to another antidepressant and was looking for a psychiatrist. *Id.* Cooper prescribed citalopram. *Id.*

On February 26, 2008 Cooper saw Hollins again. Hollins was complaining of experiencing back pain for the last two days. Tr. 281. She was able to heel and toe walk, as well as squat. *Id.* An MRI taken of Hollins's lumbar spine taken that day indicated no significant abnormality. Tr. 280.

On July 18, 2008, Lisa Beisel, M.D. ("Beisel") completed a psychiatric intake form. Beisel reported Hollins related well, exhibited normal activity, speech and alertness, with normal cognition

and logical thought. Tr. 311-12. Beisel did find Hollins to have a depressed mood with suicidal ideas. *Id.* Beisel assessed Hollins's current global assessment of functioning ("GAF") at 70-85. *Id.* Beisel recommended Hollins undergo pain management. Tr. 309. Beisel also recommended Hollins see a therapist every two weeks. *Id.*

### The Hearing Before the ALJ

Hollins's administrative hearing was held on August 20, 2008. Tr. 18. At the hearing, Hollins testified she had done no work since April 1, 2007. She stated she lived with her husband and eight year old daughter. Tr. 21.

Hollins testified she was no longer able to work due to depression and severe pain. She reported experiencing pain in her neck and lower back which surgery had not improved. Tr. 22. Hollins stated the pain was bad in the morning, and then came and went during the day, depending on her medicine. *Id.* She also testified the pain in her neck traveled down her left arm. *Id.* Hollins stated she took Hydrocodone and Zanoflex for her pain and muscle spasms. Tr. 23.

Hollins further testified Beisel was treating her for depression and that she had been seeing her for a little over a month. Tr. 23. She stated that Beisel had prescribed her Cymbalta and Topomax, while Dr. Cooper had prescribed her citalopram. *Id.* Hollins reported the medications made her feel like a zombie and made it difficult to remember everything she did. Tr. 24. She stated she had taken Zoloft from 1996 through 2008, but stopped taking it. *Id.* She stated she could not go to MHMR because she could not handle crowds and thus could not wait in the waiting room. *Id.*

Hollins testified she lives in a house. Tr. 24. She does not do any yard work and cooks once every few weeks. Tr. 24-25. She testified she starts doing housework, but her daughter usually finishes it. Tr. 25. She also stated she does a little laundry, but not all the time. Tr. 25. Hollins

testified she can drive, but tries not to, although she stated she had driven less than one week prior to the hearing.  Tr. 25-26.  According to Hollins, she does no grocery shopping.  Tr. 26.

Hollins testified that she usually spends her days in bed.  Tr. 26.  She stated she has problems bathing and washing her hair because she has difficulty standing straight and is afraid she will fall.  *Id.*  She testified she usually bathes three times per week, wears only a t-shirt, and changes the t-shirt about three times per week.  Tr. 27.  She stated she has crying spells and usually stays in her room by herself.  Tr. 28.  Her neck pain is relieved somewhat when she keeps her head on her right shoulder.  Tr. 29.  Hollins also testified her ability to seek treatment was impaired by her lack of insurance from 2005 until January 2008.  Tr. 31.

Vocational expert Donna Eagar ("Eagar") also testified at the administrative hearing.  Tr. 32.  The vocational expert classified Hollins's past job as a porter for a car rental agency as light, unskilled work, her past job as a telemarketer as sedentary, semi-skilled work, her past job as a driver as light, semi-skilled work, her past job as a service clerk for a cable company as sedentary, semi-skilled work, her past job as an administrative clerk as light, semi-skilled work, and her past job as a combination timekeeper/receptionist as sedentary, semi-skilled work.  *Id.*

The ALJ posed to Eagar a hypothetical claimant of the same age, education and experience as Hollins, who was capable of lifting and carrying twenty pounds occasionally, ten pounds frequently, sitting, standing and/or walking for about six hours in an eight hour workday, with pushing and pulling limited to the weights given, and limited to occasional overhead reaching.  Tr. 32-33.  Eagar testified such an individual would be able to perform Hollins's past jobs with the exception of porter.  Tr. 33.

-7-

The ALJ posed a second hypothetical claimant to Eagar with the additional limitations of understanding, remembering and carrying out routine step instructions, and the ability to respond appropriately to supervisors in jobs that do not require independent decision making. Tr. 33. Eagar testified such a person would be unable to perform Hollins's past jobs. *Id.* Eagar also testified such a person could perform light, unskilled work. *Id.* Specifically, the vocational expert stated such an individual would be able to perform the work of a cashier, with 65,000 such jobs in Texas and 750,000 in the nation. *Id.* Eagar also stated the individual would be able to perform the work of a counter clerk, with 8,000 such jobs in Texas and 100,000 in the nation. *Id.* Eagar additionally testified the individual would be able to perform a wide range of unskilled light assembly jobs such as production assembler, with 25,000 such jobs in Texas and 300,000 in the nation. Tr. 34.

Eagar further testified an individual would be unlikely to maintain work if he or she missed more than two days of work per month. Tr. 34. Eagar also stated if an individual was unable to stay on task and be productive for more than ten percent of the day, that person would not be able to maintain employment. *Id.*

### Issues Presented

Hollins objects generally to the ALJ's decision on the grounds that it was not based on substantial evidence and the proper legal standard. Hollins's specific objections are (1) the Commissioner's finding of Hollins's residual functional capacity was not based on substantial evidence, and (2) the ALJ failed to comply with regulations by discrediting her for her failure to obtain regular treatment without considering her explanation for this failure. This Court, accepting Magistrate Judge Pitman's well-reasoned opinion, finds each of these arguments fails.

**Standard of Review**

Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner correctly applied the relevant legal standards. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). Substantial evidence is more than a scintilla of evidence but less than a preponderance—in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). This Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez*, 64 F.3d at 174. However, this Court cannot reconsider the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If this Court finds substantial evidence to support the decision, this Court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir.1990) ("If the . . . findings are supported by substantial evidence, they are conclusive and must be affirmed."); 42 U.S.C. § 405(g).

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine if a claimant is able to engage in "substantial gainful activity" (and

therefore if she is disabled) the Social Security Commissioner uses a five-step analysis, in which the

hearing officers must:

1.  First ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.  Then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3.  Then determine if the impairment equals or exceeds in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4.  Then, if the claimant has a "severe impairment" covered by the regulations, determine whether the claimant can perform her past work despite any limitations.

5.  Then, if the claimant does not have the residual functional capacity to perform past work, decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520.  A finding of disability or no disability at any step is conclusive and

terminates the analysis.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  The claimant has

the burden of proof for the first four steps; at step five, the burden initially shifts to the Commissioner

to identify other work the applicant is capable of performing.  *Selders*, 914 F.2d at 618.  Then, if the

Commissioner "fulfills [his] burden of pointing out potential alternative employment, the burden []

shifts back to the claimant to prove that he is unable to perform the alternate work."  *Id.* (citation

omitted).

"Residual functional capacity" refers to the claimant's ability to do work despite any physical

or mental impairments.  20 C.F.R. § 404.1545(a).  The ALJ is responsible for assessing and

determining residual functional capacity at the administrative hearing level.  20 C.F.R. § 404.1546.

This assessment is based on reports from treating physicians and medical consultants about the

claimant's ability to sit, stand, walk, lift, carry, and perform other work-related activities.  20 C.F.R.

§§ 404.1513(b)(6) & 414.1513(c)(1).  The opinions of treating physicians are generally entitled to

great weight. 20 C.F.R. § 404.1527(d)(2); *Scott v. Heckler,* 770 F.2d 482, 485 (5th Cir. 1985).

However, a treating doctor's opinion on the nature and severity of an impairment is given controlling

weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in the case record."  20 C.F.R.

§ 404.1527(d)(2); *Spellman v. Shalala,* 1 F.3d 357, 364 (5th Cir. 1993).

### The ALJ's Decision

The ALJ found Hollins was not entitled to benefits.  Tr. 16.  At the first step of the analysis,

the ALJ found Hollins met the insured status requirements and had not engaged in any substantial

gainful activity at any time relevant to the decision.  Tr. 12.  At step two, the ALJ found Hollins had

the impairments of degenerative disc disease and depression, and these were "severe."  *Id.*  However,

at step three, the ALJ found these neither met or medically equaled a listed impairment.  Tr. 12-13.

The ALJ found there was no evidence Hollins experienced the degree of pain and functional

limitation required to meet or equal a listed impairment for back disorders.  *Id.*  Further, the ALJ

found her depression did not meet the requirements for a listed impairment since she did not suffer

marked limitations or episodes of decompensation, but rather experienced mild restrictions in

activities of daily living, mild difficulties in social functioning and moderate difficulties with regard

to concentration, persistence or pace.  *Id.*

-11-

In order to carry out steps four and five, the ALJ found that Hollins had the residual functional capacity to:

> Lift/carry 10 pounds frequently and 20 pounds occasionally, stand/walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. [Hollins's] ability to push/pull is limited to the weights given and [Hollins] can only occasionally reach overhead. [Hollins] could understand, remember and carrying [sic] out routine step instructions and respond appropriately to supervisors and coworkers in jobs that do not require independent decisionmaking.

Tr. 13.  Based on this determination, the ALJ relied on a vocational expert's testimony and concluded in steps four and five that although Hollins could not return to her past work, she was capable of making a successful adjustment to other work existing in significant numbers in the national economy.  Tr. 15-16.

### Analysis

Hollins claims the ALJ failed to base his decision on substantial evidence and the proper legal standard because he failed to consider the limitations resulting from a severe injury to her shoulder, the pain she suffers, the side effects of her medications, and the effects of her depression.  Hollins asserts that the ALJ's determination of her residual functional capacity and ability to maintain employment was not supported by substantial evidence.

However, the ALJ adequately based his decision on substantial evidence.  In fact, as the Magistrate Judge pointed out, the ALJ clearly acknowledged and addressed Hollins's complaint of a shoulder injury, her alleged pain, and her use of medications:

> In making these findings, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p.  The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 96-3p.

* * *

The claimant presented to the hearing with her head held to the left.  The claimant explained she held her head tilted due to exacerbated pain; pain that she described as running from the left side of her neck to her left shoulder.  The claimant testified since surgery she has experienced increased pain and swelling in her left shoulder, which precludes her from lifting her left arm overhead.  The claimant testified she has been unable to pursue medical care for this symptomatology because she lost her insurance after surgery, and when she became reinsured in January 2008 she was unable to get medical coverage for her neck because this was a preexisting condition.  The claimant testified she uses Hydrocodone on average three times a week for exacerbated pain, and muscle relaxers every other day.  In addition to chronic pain, the claimant testified she has been depressed since surgery, and consequently spends a majority of every day in bed.  The claimant, who testified she has been taking Prozac since the 1990's, also reported problems with anhedonia, diminished concentration, and suicidal ideation.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The claimant, who has been followed intermittently for back pain since the 1990's, underwent a cervical diskectomy for a large foraminal disc herniation in April 2007. Magnetic Resonance Imaging (MRI) performed post-surgical correction showed the claimant has a minimal residual annular protrusion at C5.  An MRI of her left shoulder showed mild tendinitis and mild degenerative changes in the acromioclavicular. These facts, and the fact within weeks of surgery the claimant acknowledged an ability to stand/walk 2.5 hours without difficulty, do not suggest symptoms that would preclude all work.   In fact, information provided by the claimant indicates she experienced residual pain primarily when using her left hand/arm for doing overhead work.

The evidence convinces the undersigned the claimant had one additional physical limitation not considered by the reviewing physician at the State Agency, who determined the claimant could perform the demands of light work.  Specifically, this evidence indicate the claimant, who on one occasion in the weeks following her surgery reported persistent left upper extremity pain and radiculopathy, would be unable to reach overhead on more than an occasional basis.  Considering these facts, and the fact there is no evidence the claimant regularly pursued or required medical care after a May 2007 epidural steroid injection, the undersigned is convinced the claimant could meet the demands of competitive work within the restrictions set forth above.

-13-

Tr. 13-15.

Not only did the ALJ plainly address Hollins's complaint of a shoulder injury, her alleged pain, and her use of medications, but he noted the medical evidence in the record showed only that Hollins complained of her shoulder pain in the month immediately following her surgery.  Tr. 176, 211-212.  Hollins did not cite any other evidence showing she complained of shoulder pain or sought treatment for such pain in the following months.  The ALJ also specifically recognized Hollins's shoulder pain as a factor in assessing her residual functional capacity, as he noted it limited her overhead reaching.  Contrary to Hollins's assertions, the ALJ examined this evidence and all the evidence in the record.  The ALJ found Hollins's testimony was contrary to this evidence, such that it was not completely credible.  This was not error.  As the Magistrate Judge noted, there is significant precedent for allowing ALJs to evaluate a claimant's credibility by comparing the claimant's testimony to the objective medical evidence.  *See e.g. Wilson v. Barnhart*, 210 Fed. App'x 448, 451 (5th Cir. 2006); *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987).  This Court agrees with the Magistrate Judge and finds the ALJ's decision was not contrary to substantial evidence on this basis.

Hollins further claims the ALJ's decision was erroneous because the ALJ failed to properly consider her depression in determining her residual functional capacity.  However, the ALJ clearly did so:

> In making these findings, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p.  The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 96-3p.

* * *

-14-

Similarly, while it is noted the claimant developed depressive symptoms in late 2007, progress notes that show she remained stable through January 2008, despite her failure to use medication as prescribed, suggest at most moderate limitations secondary to depression; limitations that would not preclude her from understanding, remembering, and carrying out routine step instructions and responding appropriately to supervisors and coworkers in jobs that do not require independent decision making.

In reaching this conclusion, the undersigned notes on the few occasions the claimant was examined during 2007 she did not report persistent symptoms in her neck/shoulders and on one occasion noted only a 2-day history of back pain.  The undersigned also notes following a mental status evaluation in July 2008, the claimant was assessed with social, occupational, and psychological functioning (Global Assessment of Functioning or GAF) of 70, which is indicative of mild to moderate limitations.  These facts, facts that show the claimant's physical and mental health remained stable without the need for regular medical intervention, do not suggest symptoms that would preclude sustained work.

Tr. 12-15.  Thus, the ALJ properly considered Hollins's depression, her symptoms, her stoppage of prescription medication use, and her assessed GAF in determining her depression resulted in mild to moderate limitations.  These were not contrary to substantial evidence, and were addressed in determining Hollins's residual functional capacity.

Hollins asserts the ALJ failed to consider her ability to maintain employment, and that this was error.  Hollins asserts the ALJ must determine both whether a claimant can obtain employment and whether the claimant can maintain such employment for a significant period of time.  However, the Fifth Circuit has addressed this issue, and has held a specific finding about whether a claimant can maintain employment is not required "absent evidence" a claimant's ability to maintain work could be compromised by their ailments.  *Dunbar v. Burnhart*, 330 F.3d 670, 671 (5th Cir. 2003).  If the evidence does not show "the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms," the ALJ need not make an explicit finding of the claimant's ability to maintain employment.  *Frank v. Burnhart*, 326 F.3d 618, 619 (5th Cir. 2003).  Likewise, when a personality

disorder is the basis for a disability benefits claim, "the dispute focuses on whether the claimant has the emotional capacity to engage in sustained employment," but a determination that the claimant actually cannot engage in sustained employment "must . . . be supported by more than a claimant's personal history; it must also be supported by medical evidence." *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986) (citations omitted).  Hollins has not cited any evidence in the record to support her suggestion that her physical ailments wax and wane, or that her depression prevents her from engaging in sustained employment.

Hollins asserts also that the ALJ erred by discrediting her for failing to obtain regular treatment without considering her explanation for her failure to do so.  The Fifth Circuit has held if "a claimant cannot afford the prescribed treatment or medicine, and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).  When determining whether a condition that is disabling in fact will be disabling in law due to a plaintiff's inability to afford the prescribed treatment, the ALJ may consider a plaintiff's failure to seek medical treatment when facilities are available to the indigent.  *See* Social Security Ruling 82-59 (seeking free community resources factored into good cause for failure to follow prescribed treatment).

Hollins testified at the administrative hearing she was unable to obtain treatment for some time due to a lack of health insurance.  Tr. 31.  She further testified that once she was added back to her ex-husband's insurance, she still could not obtain coverage for certain treatments because they were considered preexisting conditions.  *Id.*  She also testified she did not go to community mental health services (MHMR) because she "[couldn't] handle crowds."  Tr. 14.

However, as the Magistrate Judge points out, Hollins has not provided any evidence that would show she attempted to obtain but was unable to afford treatment. Neither has she presented evidence showing she attempted to take advantage of free or low-cost mental health services but was unable to because of her ailments, either physical or mental. Not only did Hollins fail to present any such evidence, she did not give this Court any reason to believe that it exists, even though the ALJ requested additional evidence, and left the record open so that Hollins could provide it:

> I do not have that visit with the psychiatrist and I certainly need that. All I have is a mention that she stopped taking Zoloft and her depression was continuing. What I have as I indicated when she went back to the doctor in '08 there's not even any mention of the problem with the neck and the shoulder. I'm going to turn now to the -- we'll leave the record open for 20 days. What I'd like to -- I need that psych report the progress report from the psychiatrist . . . any other evidence that's not in the record I'd like to see. And I'd also like to see [Hollins's] pharmacy records for the last two years.

Tr. 31-32. Hollins has not shown the ALJ erred in considering the lack of treatment records from April 2007 through 2008 in evaluating Hollins's credibility as to her impairments.

In conclusion, this Court finds Hollins's allegations to be without merit. The ALJ cited a multitude and variety of evidence from Hollins's medical records, and carefully weighed it. The ALJ applied the proper legal standards, his determination was supported by substantial evidence in the record, and there was no error in his determination of Hollins's credibility. This Court will not reweigh the determination or substitute its judgment for that of the ALJ. Hollins's claim is DENIED.

**Conclusion**

In accordance with the foregoing:

IT IS ORDERED that the Report and Recommendation of the United States Magistrate

Judge [#18] is ACCEPTED;

IT IS FURTHER ORDERED that the decision of the Commissioner of the

Social Security Administration to deny benefits to Carolina Hollins is hereby

AFFIRMED.

SIGNED this the 19th day of July 2010.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE